STATE OF CONNECTICUT *v.* LUIS DIAZ
(SC 17949)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Eveleigh, Js.

94

Argued December 8, 2010—officially released August 16, 2011

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Adam E. Mattei*, special deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Howard S. Stein*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The primary issues in this appeal are: (1) whether the trial court committed plain error by failing, sua sponte, to give a special credibility instruction to the jury concerning three witnesses for the state who were involved in the criminal justice system and, therefore, may have had a personal interest in testifying for the state; and (2) whether this court should exercise its supervisory powers to require the trial courts to give a special credibility instruction for all such witnesses. The defendant, Luis Diaz, was charged and convicted of murder in violation of General Statutes § 53a-54a, carrying a pistol without a permit in violation of General Statutes § 29-35 and criminal possession of a pistol in violation of General Statutes § 53a-217c. At trial, three witnesses who had criminal matters pending in a variety of venues testified that they had seen the defendant commit the murder. On appeal, the defendant claims that the trial court committed plain error when it failed to instruct the jury, sua sponte, that the testimony of the three witnesses should be viewed with great caution in light of the potential benefits that they might receive from the government in the pending criminal matters in exchange for their testimony. In the alternative, he claims that this court should exercise its supervisory powers to require such an instruction. We disagree and affirm the judgment of conviction.

The jury reasonably could have found the following facts. On the evening of January 11, 2006, the victim, Philip Tate, was shot and killed outside a bar known as the Side Effect West in the city of Bridgeport. Thereafter, the defendant was arrested and charged with murdering the victim, carrying a pistol without a permit and criminal possession of a pistol or revolver.[1]

---

[1] The circumstances surrounding the defendant's arrest are not clear from the record.

In March, 2006, Corey McIntosh gave a statement to the police indicating that the defendant had been the shooter. At that time, McIntosh was on federal probation and had received a three year suspended sentence for possessing narcotics in Connecticut. McIntosh testified at the defendant's trial that he had seen the defendant outside the Side Effect West immediately before the shooting and had heard shots as he entered the bar. He then ran out the back door and saw the defendant running down the street with a gun in his hand. Additional state narcotics charges were pending against McIntosh at the time of trial. He testified that, while no promises had been made in connection with the pending charges, he was hoping to receive some consideration in exchange for his testimony.

At some point after July, 2006, Eddie Ortiz wrote a letter to the prosecutor's office indicating that he had information about the murder. He was incarcerated at the time and stated in his letter that he was looking for some consideration in exchange for his testimony. Ortiz testified at the defendant's trial that he had seen the defendant shoot the victim. He also testified that, during the trial, he had been placed in the same holding cell as the defendant, who said to him, "You know what I did" and "I know where you live at." In addition, Ortiz testified that the defendant had offered him $5000 not to testify. He further testified that the prosecutor's office had not promised him anything in exchange for his testimony and that he had been told that it would be up to a judge whether he would receive any benefit, such as a sentence modification. He had expectations, however, that his testimony would be taken into consideration.

Approximately six months after the murder, James Jefferson asked his attorney to inform Harold Dimbo, a detective with the Bridgeport police department, that Jefferson had information about the murder. Jefferson,

who was incarcerated in Connecticut on domestic violence charges at the time, was subject to lifetime parole in New York in connection with a conviction on narcotics charges in that state. Dimbo visited Jefferson in prison and Jefferson agreed to give a statement about the shooting. Dimbo made no promises to Jefferson. In September, 2006, the domestic violence charges were dismissed for lack of evidence. Thereafter, Jefferson testified at the defendant's trial that he had seen the defendant and the victim outside Side Effect West immediately before the shooting. He also saw the defendant shoot at someone, but he did not see the victim at that point. At the time of trial, Jefferson was incarcerated in Connecticut for violating his parole in New York.

McIntosh, Ortiz and Jefferson were the only witnesses who identified or implicated the defendant as the shooter. The defendant's girlfriend, Shenisha McPhearson, testified that the defendant had been with her at her apartment at the time of the shooting. The state presented no physical evidence to tie the defendant to the shooting and the gun used in the shooting was never recovered.

At trial, the trial court gave the jury a general credibility instruction.[2] In his arguments to the jury, defense

---

[2] The trial court instructed the jury that "[t]he credibility of witnesses and the weight to be given their testimony are matters for you to determine. However, there are some principles you should keep in mind. You may believe all, none, or any part of any witness' testimony. In making that determination, you may wish to consider the following factors: One, was the witness able to see, hear or know the things about which that witness testified? How well was the witness able to recall and describe those things? What was the witness' manner while testifying? Did the witness have an interest in the outcome of the case or any bias or prejudice concerning any party or any matter involved in the case? How reasonable was the witness' testimony considered in light of all the evidence in the case? Was the witness' testimony contradicted by what that witness has said or done at another time, or by the testimony of other witnesses, or by other evidence? If you find that a witness has deliberately testified falsely in some respect, you should carefully consider whether you should rely on any of that witness' testimony. In deciding whether or not to believe a witness, keep in mind

counsel argued that Jefferson's testimony represented "the kind of savvy in the presentation or recitation of events from people who are subject to the system over a lifetime. Their truthfulness is mercurial. It's not like the average reasonable person. It's what accommodates them." He also stated that "Ortiz is the classic example of the savvy lifetime criminal . . . ." In addition, he argued that Ortiz "is just providing us with what he thinks the state would want to hear and to say to get some accommodation on his sentence . . . ." Finally, defense counsel argued that each of the witnesses had "a reason to fabricate for their own benefit."

In response to defense counsel's arguments, the prosecutor stated to the jury, "How cold a person do you have to be to point an accusatory finger and say I saw this man commit murder when you're doing it for your own motivation? How cold do you have to be? What is the benefit that would cause a person to be that cold? They have been promised nothing. Flat out told you get no benefit. It's expected that you would cooperate as a good citizen and a good person." He further argued that the length of the sentences that the witnesses faced was not sufficient to provide a motivation to fabricate testimony.

that people sometimes forget things. You should consider whether a contradiction is an innocent lapse of memory or an intentional falsehood. That may depend on whether it has to do with an important factor or a small detail. The weight of evidence does not depend on the number of witnesses testifying on one side or the other. It's the quality and not the quantity of evidence that controls.

\* \* \*

"The fact that certain witnesses have admitted that they've been previously convicted of crimes is only admissible on the question of the credibility of those witnesses, that is the weight that you will give their testimony. It's your duty to determine whether each witness is to be believed fully, partly or not at all. You may consider a witness' prior conviction in weighing the credibility of that witness and give such weight to those facts as you decide is fair and reasonable under all the circumstances."

The jury returned a verdict of guilty on all three counts and the trial court rendered judgment in accordance with the verdict. The defendant then appealed from the judgment of conviction directly to this court pursuant to General Statutes § 51-199 (b) (3).

The defendant first claims that the trial court committed plain error when it failed to instruct the jury, sua sponte, that it must consider with great caution the testimony of McIntosh, Ortiz and Jefferson, in light of their involvement in the criminal justice system and the possibility that they would receive some benefit from the government in exchange for their testimony.[3] Specifically, the defendant contends that the reasoning underlying this court's decisions in *State* v. *Patterson*, 276 Conn. 452, 469–70, 886 A.2d 777 (2005) (trial court is required to give special credibility instruction for jailhouse informant who has been promised benefit in exchange for testimony), and *State* v. *Arroyo*, 292 Conn. 558, 569, 973 A.2d 1254 (2009) (expanding *Patterson* and holding that trial court should give special credibility instruction "whenever such testimony is given, regardless of whether the informant has received an express promise of a benefit"), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010), applies equally to any witness who is in a position to receive a benefit from the state, even if the witness is not a classic jailhouse informant.[4] The defendant also requests that, if this court does not agree that *Patterson* and *Arroyo* apply to the witnesses in the present case, this court should exercise its supervisory powers to expand the circumstances under which the trial courts are required

---

[3] The defendant concedes that the trial court's failure to give a special credibility instruction was not of constitutional magnitude and, therefore, his claim does not qualify for review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[4] As we discuss later in this opinion, a classic jailhouse informant is a witness who has testified that the defendant has confessed to him or had made inculpatory statements to him while they were incarcerated together.

to give a special credibility instruction to include all cases in which a witness has a potential interest in testifying for the state and there is "some evidence in the record indicating that the witness is not entirely reliable or may have a motive to falsify his testimony . . . ." The state disputes the defendant's claim that the trial court committed plain error and urges this court to decline the defendant's invitation to invoke its supervisory powers. In addition, the state contends that, if the trial court did commit plain error, any such error was harmless in light of the strong circumstantial evidence against the defendant.[5] We conclude that the trial court did not commit plain error and decline the defendant's invitation to invoke our supervisory powers to require the trial courts to give a special credibility instruction in all cases in which a witness has a potential interest in testifying for the state. We reiterate, however, that it is well within the trial court's discretion to give a cautionary instruction in cases in which it believes a witness' testimony is particularly unreliable.

We first address the defendant's claim that the trial court committed plain error when it failed to give a special credibility instruction regarding the testimony

[5] The state further claims that the defendant voluntarily waived his claim when he failed to request a special credibility instruction, denied the trial court's repeated requests for input regarding the proposed jury charges and failed to object to the charge as given. The defendant is asking this court, however, to adopt a new supervisory rule requiring the trial courts to give a special credibility instruction in *all* cases in which a defendant is involved in the criminal justice system and may have a personal interest in testifying. Accordingly, to the extent that the defendant claims that the trial court was *required* to give such an instruction as a matter of law, his claim was not waived because any such claim to the trial court would have been futile.

We recognize that, to the extent that the defendant seeks plain error review, he necessarily is claiming that the trial court improperly applied a clear and obvious rule of law that existed at the time of trial. See footnote 8 of this opinion. We need not determine, however, whether his claim of plain error was waived because we conclude that the trial court did not commit plain error.

of McIntosh, Ortiz and Jefferson. "The plain error doctrine, which is codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Ebron*, 292 Conn. 656, 674, 975 A.2d 17 (2009), overruled in part on other grounds by *State* v. *Kitchens*, 299 Conn. 447, 472–73, 10 A.3d 942 (2011).

"Generally, a [criminal] defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely." (Internal quotation marks omitted.) *State* v. *Patterson*, supra, 276 Conn. 467. This court has held, however, that a special credibility instruction is required for three types of witnesses, namely, complain-

ing witnesses,[6] accomplices[7] and jailhouse informants. *State* v. *Ebron*, supra, 292 Conn. 673. Typically, a jailhouse informant is a prison inmate who has testified about confessions or inculpatory statements made to him by a fellow inmate. Indeed, this court's decision in *Patterson* was based on that premise. *State* v. *Patterson*, supra, 470 n.11 ("although it is true that the testimony of an accomplice often is very damaging to the accused . . . testimony about an admission of guilt by the accused may be 'the most damaging evidence of all' "). *Patterson* has not been applied to require a special credibility instruction when an incarcerated witness has testified concerning events surrounding the crime that he or she witnessed outside of prison, as distinct from confidences that the defendant made to the witness while they were incarcerated together. See *State* v. *Ebron*, supra, 675 n.17 (whether *Patterson* should be expanded to apply to such witnesses is open question).

The rationale for requiring a special credibility instruction for jailhouse informants is that "an informant who has been promised a benefit by the state in return for his or her testimony has a powerful incentive, fueled by self-interest, to implicate falsely the accused.

---

[6] "Under the complaining witness exception, when the complaining witness [himself] could . . . have been subject to prosecution depending only upon the veracity of his account of [the] particular criminal transaction, the court should . . . [instruct] the jury in substantial compliance with the defendant's request to charge to determine the credibility of that witness in the light of any motive for testifying falsely and inculpating the accused. . . . In order for [such a] request to be applicable to the issues in the case, there must be evidence . . . to support the defendant's assertion that the complaining witness was the culpable party." (Citation omitted; internal quotation marks omitted.) *State* v. *Patterson*, supra, 276 Conn. 467–68.

[7] "[T]he inherent unreliability of accomplice testimony ordinarily requires a particular caution to the jury [because] . . . [t]he conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he testifies. When those conditions exist, it is the duty of the [court] to specially caution the jury." (Internal quotation marks omitted.) *State* v. *Patterson*, supra, 276 Conn. 468.

Consequently, the testimony of such an informant, like that of an accomplice, is inevitably suspect." *State* v. *Patterson*, supra, 276 Conn. 469. We concluded in *Patterson* that, "[b]ecause the testimony of an informant who expects to receive a benefit from the state in exchange for his or her cooperation is no less suspect than the testimony of an accomplice who expects leniency from the state . . . the defendant was entitled to [a special credibility] instruction substantially in accord with the one that he had sought." Id., 470; see also *State* v. *Arroyo*, supra, 292 Conn. 569 (expanding *Patterson* to require special credibility instruction whenever jailhouse informant testifies regardless of whether informant received "express promise of a benefit").

This court recently has held that the trial court's failure to give, sua sponte, a jailhouse informant instruction pursuant to *Patterson* does not constitute plain error when the trial court has instructed the jury on the credibility of witnesses and the jury is aware of the witness' motivation for testifying. *State* v. *Ebron*, supra, 292 Conn. 675–76. In the present case, the defendant contends that the trial court committed plain error when it failed, sua sponte, to give a special credibility instruction for the testimony of Jefferson, McIntosh and Ortiz. We disagree. In the present case, as in *Ebron*, the trial court gave a general credibility instruction and the jury was aware of the witnesses' involvement in the criminal justice system and their expectations that they would receive consideration in exchange for their testimony. The defendant makes no claim that the witnesses actually received benefits that the jury did not learn about or that there were undisclosed agreements between the witnesses and the government. More fundamentally, the defendant appears to concede that the rule of *Patterson* and *Arroyo* that the trial court is required to give a special credibility instruction for jail-

house informants does not apply to McIntosh and Jefferson because those witnesses, who testified only about the events surrounding the shooting, were not jailhouse informants. Rather, the defendant claims only that those witnesses were *similar to* jailhouse informants because they were in a position to receive benefits from the government in exchange for their testimony. Indeed, the defendant expressly acknowledges that, because McIntosh and Jefferson were not jailhouse informants, requiring a credibility instruction for these witnesses would be an expansion of *Patterson.* Accordingly, we conclude that the trial court's failure to give a special credibility instruction concerning the testimony of McIntosh and Jefferson pursuant to *Patterson* or *Arroyo* would not have been improper even if the defendant had requested such an instruction. A fortiori, its failure to do so sua sponte did not constitute an error that was "so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings," or "of such monumental proportion that [it] threaten[s] to erode our system of justice and work a serious and manifest injustice on the aggrieved party."[8] (Internal quotation marks omitted.) Id., 674.

With respect to Ortiz, the defendant argues that he was a classic jailhouse informant because he testified that the defendant had confessed to him when they were incarcerated together.[9] Even if we assume that the trial court's failure to give a special credibility instruction for Ortiz would have been improper under

---

[8] It is axiomatic that the trial court's proper application of the law existing at the time of trial cannot constitute reversible error under the plain error doctrine. *Crawford* v. *Commissioner of Correction,* 294 Conn. 165, 205, 982 A.2d 620 (2009) ("a clear and obvious mistake on the part of the trial court is a prerequisite for reversal under the plain error doctrine" [internal quotation marks omitted]).

[9] The state contends that, even if Ortiz' account of the defendant's statements to him was accurate, those statements did not amount to a confession, but merely displayed some consciousness of guilt.

*Arroyo* if the defendant had requested such an instruction, the court's failure to do so sua sponte did not rise to the level of reversible plain error under *Ebron* because the trial court gave a general credibility instruction and the jury was made aware of Ortiz' motivation for testifying.[10] See *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 205, 982 A.2d 620 (2009) (under plain error doctrine, it is not enough for defendant to demonstrate his position is correct, rather, party seeking plain error review must demonstrate that "claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal" even though claim was not raised before trial court [internal quotation marks omitted]); id. ("although a clear and obvious mistake on the part of the trial court is a prerequisite for reversal under the plain error doctrine, such a finding is not, without more, sufficient to warrant the application of the doctrine" [internal quotation marks omitted]); see also Practice Book § 60-5 (court "shall not be bound to consider a claim unless it was distinctly raised at the trial"). We conclude, therefore, that the trial court did not commit plain error when it failed to

_____

[10] The defendant argues that the present case is distinguishable from *Ebron* because the jury was not aware that Ortiz had a motivation for fabricating testimony. We disagree. The jury was aware that Ortiz was incarcerated on a robbery conviction when he gave his testimony; that he did not tell the police what he knew about the shooting until he was incarcerated on the robbery conviction; that he had asked for consideration from the prosecutor's office in exchange for giving information about the shooting; that he was told that he would receive no such consideration; that he was told that only a Superior Court judge could change his sentence; and that he had an expectation and a hope that he would receive some consideration in exchange for his testimony, but he had received no promises. In addition, on cross-examination, when defense counsel asked Ortiz whether he was aware that the state would have to agree before he could ask a judge for consideration in exchange for his testimony Ortiz replied, "Yes, sir." When defense counsel rephrased the question, however, Ortiz replied, "I don't know about that." In addition, as previously indicated in this opinion, defense counsel argued to the jury that Ortiz was testifying in order to receive a benefit from the state. The defendant has pointed to no information concerning Ortiz' motivation to fabricate testimony that was withheld from the jury.

give, sua sponte, a special credibility instruction for these three witnesses.

We next turn to the defendant's request that this court exercise its supervisory power to instruct the trial courts that they must give a special credibility instruction whenever a witness in a criminal case is incarcerated or is serving out a sentence, or otherwise is in a position to receive a benefit from the state in exchange for testifying, as long as there is some additional evidence indicating that the witness is not wholly reliable or that he expects some benefit from this testimony. It is well settled that "[a]ppellate courts possess an inherent supervisory authority over the administration of justice. . . . Supervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Under our supervisory authority, we have adopted rules intended to guide the lower courts in the administration of justice in all aspects of the criminal process. . . . *State* v. *Valedon*, 261 Conn. 381, 386, 802 A.2d 836 (2002). We ordinarily invoke our supervisory powers to enunciate a rule that is not constitutionally required but that we think is preferable as a matter of policy. See, e.g., *State* v. *Reynolds*, 264 Conn. 1, 215, 836 A.2d 224 (2003) ([exercise of supervisory powers is] an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004)."[11] (Internal

---

[11] This court and the Appellate Court frequently have applied newly adopted supervisory rules only to future cases. See, e.g., *State* v. *Aponte*, 259 Conn. 512, 522, 790 A.2d 457 (2002); *State* v. *Delvalle* 250 Conn. 466, 475–76, 736 A.2d 125 (1999); *State* v. *Sitaras*, 106 Conn. App. 493, 507, 942 A.2d 1071, cert. denied, 287 Conn. 906, 950 A.2d 1283 (2008). In some cases,

quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 577–78, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1789, 164 L. Ed. 2d 537 (2006).

The defendant contends that our decision in *State* v. *Arroyo*, supra, 292 Conn. 569, requiring a special credibility instruction for all jailhouse informants, regardless of whether they have received an express promise of a benefit, applies equally to witnesses who are not classic jailhouse informants because they have testified about events that they observed rather than inculpatory statements made by the defendant.[12] Specif-

however, we have applied a newly adopted supervisory rule retroactively to the case under review. See *State* v. *Patterson*, supra, 276 Conn. 470, 491 (reversing judgment when trial court failed to give special credibility instruction for jailhouse informant who has been promised benefit in exchange for testimony); see also *State* v. *Arroyo*, supra, 292 Conn. 571 (applying harmless error analysis when trial court failed to give special credibility instruction for witness who had not received express promise of benefit in exchange for testimony). Our cases have not always been clear as to the reason for this distinction. In cases involving prosecutorial impropriety, however, we have stated that "we will exercise our supervisory authority to reverse an otherwise lawful conviction only when the drastic remedy of a new trial is clearly necessary to deter the alleged prosecutorial [impropriety] in the future. . . . Thus, [r]eversal of a conviction under [our] supervisory powers . . . should not be undertaken without balancing all of the interests involved: the extent of prejudice to the defendant; the emotional trauma to the victims or others likely to result from reliving their experiences at a new trial; the practical problems of memory loss and unavailability of witnesses after much time has elapsed; and the availability of other sanctions for such misconduct." (Citation omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 423, 844 A.2d 810 (2004). In the present case, because we decline the defendant's invitation to adopt a new supervisory rule, we need not consider whether the adoption of such a rule would require the reversal of the defendant's conviction.

[12] The defendant also relies on: *United States* v. *Prawl*, 168 F.3d 622, 628 (2d Cir. 1999) (defendant "is entitled to a charge that identifies the circumstance that may make one or another of the government's witnesses particularly vulnerable to the prosecution's power and influence, and that specifies the way [by catalog or example] that a person so situated might be particularly advantaged by promoting the prosecution's case"); *United States* v. *Cervantes-Pacheco*, 826 F.2d 310, 316 (5th Cir. 1987) (special cautionary instruction should be given when government uses paid informant), cert. denied sub nom. *Nelson* v. *United States*, 484 U.S. 1026, 108 S. Ct. 749,

ically, the defendant relies on the language in *Arroyo* stating that "a particularly clever informant realizes that a successful performance on the witness stand is enhanced if it appears he or she is not benefiting from the testimony. . . . These informants wait until after they've testified to request favors—a request that is generally answered. . . . And, because the reward is not offered before the testimony, the jury has no way to measure the informant's motivation to fabricate testimony, as the prosecutor . . . is under no obligation to disclose nonexisting exculpatory evidence. . . . Thus, the expectation of a [r]eward for testifying is a systemic reality . . . even where the informant has not received an explicit promise of a reward." (Citations omitted;

98 L. Ed. 2d 762 (1988); *People* v. *Dela Rosa*, 644 F.2d 1257, 1259 (9th Cir. 1980) ("[t]he courts have long recognized that the definition of an informer includes persons who provide evidence against a defendant for some personal advantage or vindication, as well as for pay or immunity"); *Turner* v. *State*, 515 P.2d 384, 386 (Alaska 1973) (same); *State* v. *Grimes*, 295 Mont. 22, 31, 982 P.2d 1037 (1999) (cautionary instruction is prudent when government informant motivated by personal gain rather than independent law enforcement purposes provides testimony); and *Commonwealth* v. *Donnelly*, 233 Pa. Super. 396, 416, 336 A.2d 632 (1975) ("special cautionary instructions have been used where the incriminating testimony is uncorroborated or unsubstantiated, or in those situations where the informer provides evidence for pay or for immunity from punishment or for personal advantage or vindication"), cert. denied, 424 U.S. 974, 96 S. Ct. 1477, 47 L. Ed. 2d 744 (1976). None of these cases, however, squarely supports the defendant's argument that the trial court is required to give a special credibility instruction whenever there is a possibility that a witness could receive some benefit from the government in exchange for testifying. See *United States* v. *Prawl*, supra, 629 (declining to decide whether failure to give individual special credibility instruction for government witnesses was error); *United States* v. *Cervantes-Pacheco*, supra, 316 (special cautionary instruction should be given when government uses paid informant); *People* v. *Dela Rosa*, supra, 1259 (instruction was required when witness received explicit promise of benefit in exchange for testimony); *Turner* v. *State*, supra, 386 (instruction not required for witness who was police officer and was paid to perform undercover investigation); *State* v. *Grimes*, supra, 30–31 (instruction was required when witness was classic jailhouse informant); and *Commonwealth* v. *Donnelly*, supra, 416 (instruction not required when witness was not paid for information but was on parole and was attempting to avoid violation by reporting contacts with defendant).

internal quotation marks omitted.) Id., 568. We also recognized in *Arroyo* that prosecutors are under pressure to reward jailhouse informants for testifying even in the absence of an express agreement "because failing to deliver in one case would chill prospective future snitches"; (internal quotation marks omitted) id., 568 n.9; and because, if the prosecutor fails to reward the informant, he takes the risk that the informant will recant. Id., 569 n.9. With these concerns in mind, we concluded that the trial courts must give a special credibility instruction for a jailhouse informant even when the informant has not received an explicit promise of a government benefit.

We agree with the defendant that some of the same concerns that gave rise to our decision in *Arroyo* are present whenever a witness is in a position to receive a benefit from the government. Specifically, we are aware that it is difficult for the defendant to ensure that the jury is fully aware of such a witness' potential motivations for testifying because both the witness and the government have an incentive not to enter into an explicit agreement before the witness testifies, even though there is frequently an implicit understanding that the witness will receive some consideration in exchange for testifying. We do not agree, however, that these concerns are as weighty in cases where the witness is not testifying about a jailhouse confession, but is testifying about events concerning the crime that the witness observed. Testimony by a jailhouse informant about a jailhouse confession is inherently suspect because of the ease with which such testimony can be fabricated, the difficulty in subjecting witnesses who give such testimony to meaningful cross-examination and the great weight that juries tend to give to confession evidence. *State* v. *Patterson*, supra, 276 Conn. 470 n.11; see also id. ("testimony about an admission of guilt by the accused may be 'the most damaging evidence of

all' "); see also *State* v. *Lawrence*, 282 Conn. 141, 174, 920 A.2d 236 (2007) (assuming arguendo validity of studies that "reflect a national trend concerning the undue weight afforded to false confession evidence by juries generally"). In contrast, when a witness testifies about events surrounding the crime that the witness observed, the testimony can be compared with the testimony of other witnesses about those events, and the ability of the witness to observe and remember the events can be tested. Accordingly, cross-examination and argument by counsel are far more likely to be adequate tools for exposing the truth in these cases than in cases involving jailhouse confessions. In addition, when a witness is not incarcerated, but is merely on parole or subject to pending charges, the special concerns relating to incarcerated witnesses do not come into play. *State* v. *Arroyo*, supra, 292 Conn. 569 n.10 (incarcerated witnesses "are likely to feel that they have nothing to lose and much to gain by providing information to the government"; "what may seem trivial to those on the outside, may still act as an invitation to perjury to those on the inside"; and incarcerated witness' "motivations for testifying can include . . . some emotional impetuses . . . [such as] the thrill of playing detective, fear, and survival" [internal quotation marks omitted]).

Moreover, we agree with the state that, if we were to require a special credibility instruction for all witnesses who may be in a position to receive a benefit from the state because they are involved in some way with the criminal justice system, we would be creating an exception that would swallow the rule that the trial court generally is not required to give such an instruction for the state's witnesses. It is an unfortunate reality that "the government cannot be expected to depend exclusively upon the virtuous in enforcing the law." *United States* v. *Richardson*, 764 F.2d 1514, 1521 (11th Cir.), cert. denied sub nom. *Crespo-Diaz* v. *United States*,

474 U.S. 952, 106 S. Ct. 320, 88 L. Ed. 2d 303 (1985). Rather, the government "must often rely on witnesses with a less than impeccable history in order to prosecute criminal activity." *United States* v. *Bass*, 478 F.3d 948, 951 (8th Cir. 2007). We further note that the defendant has not cited a single case in which a court has squarely held that a special credibility instruction is required whenever a witness is involved somehow in the criminal justice system and, therefore, has a potential personal interest in testifying. See footnote 12 of this opinion. We therefore decline the defendant's request that we exercise our supervisory powers to instruct the trial courts that they must give a special credibility instruction in every such case.

The defendant suggests that, even if a supervisory rule requiring the trial courts to give an instruction in *every* case in which the witness is in a position to receive a benefit from the government would not be appropriate, we could limit the application of the requested new supervisory rule to cases in which there is "some evidence in the record indicating that the witness is not entirely reliable or may have a motive to falsify his testimony . . . ." It is already well established under our existing case law, however, that, although a defendant generally "is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely"; (internal quotation marks omitted) *State* v. *Patterson*, supra, 276 Conn. 467; "[i]t is within the province, and may be within the duty, of the trial judge to not only call attention to the evidence adduced, but [also] to state to the jury in the charge his own opinion of the nature, bearing and force of such evidence."[13] (Internal

---

[13] We acknowledge that *Patterson* and the other cases in which this court has stated that a defendant generally is not entitled to a special credibility instruction for state's witnesses arguably are ambiguous as to whether they held that the trial court is *prohibited* from giving a special credibility instruction unless the witness falls into a specific exception, or whether they merely held that the trial court is *required*, as a matter of law, to give a special

quotation marks omitted.) *State* v. *Lemoine*, 233 Conn. 502, 510–11, 659 A.2d 1194 (1995); see also *State* v. *Anderson*, 212 Conn. 31, 49, 561 A.2d 897 (1989) ("[t]he trial court, like the jury, may assess a witness' credibility and, if relevant, may comment on it"); *State* v. *Cari*, 163 Conn. 174, 182, 303 A.2d 7 (1972) ("[o]n numerous

credibility instruction only in certain limited circumstances. See *State* v. *Ebron*, supra, 292 Conn. 673 ("[W]e stated [in *Patterson*] that there are two exceptions to the general rule that a [criminal] defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely . . . [namely] the complaining witness exception and the accomplice exception. . . . We then observed that an informant who has been promised a benefit by the state in return for his or her testimony has a powerful incentive, fueled by self-interest, to implicate falsely the accused. Consequently, the testimony of such an informant, like that of an accomplice, is inevitably suspect. . . . Accordingly, we adopted a third exception to the general rule and concluded that the defendant should have received, upon his request, a cautionary instruction about the credibility of a jailhouse informant [b]ecause the testimony of an informant who expects to receive a benefit from the state in exchange for his or her cooperation is no less suspect than the testimony of an accomplice who expects leniency from the state . . . ." [Citations omitted; internal quotation marks omitted.]); *State* v. *Patterson*, supra, 276 Conn. 467 ("Generally, a [criminal] defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely. . . . We have recognized two exceptions to this general rule, however: the complaining witness exception and the accomplice exception." [Citations omitted; internal quotation marks omitted.]); see also *State* v. *Ortiz*, 252 Conn. 533, 561, 747 A.2d 487 (2000) (defendant generally is not entitled to special credibility instruction unless witness falls into one of two specific exceptions); *State* v. *Cooper*, 182 Conn. 207, 212 n.5, 438 A.2d 418 (1980) ("We do not suggest that . . . a criminal defendant would be entitled to an instruction singling out any witness who testifies for the state and highlighting his possible motive for falsifying his testimony. We hold only that the defendant is entitled to such an instruction only where it is requested with regard to a complaining witness who could himself be subject to prosecution depending upon the veracity of his version of the particular criminal transaction involved."). Any ambiguity, however, is resolved by our other cases holding that the trial court always has the discretion to comment on the credibility of witnesses. Nothing in *Patterson*, *Ebron*, *Ortiz* or *Cooper* indicates that these cases overruled this well established common-law rule. Thus, it is clear that these cases merely stand for the proposition that the trial court is not *required* to give a special credibility instruction for government witnesses unless the witness falls into an exception.

occasions this court has stated that the trial court in a criminal case may, in its discretion, make fair comment on the evidence and particularly on the credibility of witnesses"). "[G]enerally the extent to which the court should discuss the evidence in submitting a case to the jury is, so long as in criminal cases the jury [is] not directed how to find [its] verdict, within the discretion of the trial judge." (Internal quotation marks omitted.) *State* v. *Lemoine*, supra, 511.

Thus, we take this opportunity to reaffirm the well established common-law rule that it is within the discretion of a trial court to give a cautionary instruction to the jury whenever the court reasonably believes that a witness' testimony may be particularly unreliable because the witness has a special interest in testifying for the state and the witness' motivations may not be adequately exposed through cross-examination or argument by counsel. In determining whether to give such an instruction, the trial court may consider the circumstances under which the witness came forward; the seriousness of the charges with which the witness has been charged or convicted; the extent to which the state is in a position to provide a benefit to the witness and the potential magnitude of any such benefit; the extent to which the witness' testimony is corroborated by other evidence; the importance of the witness' testimony to the state's case; and any other relevant factor. See id. ("[w]ithin constitutional limitations concerning trial by jury, the nature and extent of the trial court's comments on the evidence must largely depend on the facts involved in a particular case and the manner in which it has been tried").

Because the trial courts already have the discretion to give a special credibility instruction under existing case law, there is no need for this court to create a new supervisory rule requiring a special credibility instruction in cases where there is evidence that the

witness is particularly unreliable.[14] We also conclude that, because the trial court already had the discretion to give a special credibility instruction for the three witnesses if the defendant could establish that the specific facts and circumstances of this case showed that they were particularly unreliable, and because he failed to request such an instruction, any claim that the trial court should have given such an instruction was not preserved for review by this court. Moreover, because "an instructional error relating to general principles of witness credibility is not constitutional in nature"; *State* v. *Patterson*, supra, 276 Conn. 471; the defendant would not be entitled to review of any such claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), even if he had sought such review.

The judgment is affirmed.

In this opinion NORCOTT, ZARELLA, McLACHLAN and EVELEIGH, Js., concurred.

---

[14] We recognize that, under our existing case law, the trial courts are *allowed* to give a special credibility instruction when it is warranted by the facts and circumstances of a case, whereas the defendant seeks a new supervisory rule *requiring* the trial courts to give a special credibility instruction when there is evidence that a witness is particularly unreliable. Such a mandatory rule, however, would necessarily require the trial courts to exercise their judgment in determining whether a special credibility instruction is required. It is clear, therefore, that there is no practical difference between the existing common-law rule that a trial court has the discretion to give a special credibility instruction when it is warranted by the facts and circumstances of a case and a supervisory rule that would require a trial court to give such an instruction when it determines, in the exercise of its judgment, that the instruction is warranted. See *State* v. *Lemoine*, supra, 233 Conn. 510–11 ("[i]t is within the province, *and may be within the duty*, of the trial judge to not only call attention to the evidence adduced, but [also] to state to the jury in the charge his own opinion of the nature, bearing and force of such evidence" [emphasis added; internal quotation marks omitted]). Accordingly, because it is clear from our case law that the trial courts already have the discretion to give such an instruction if it is warranted by the facts and circumstances of a case, there is no need for a new supervisory rule requiring them to do so.

PALMER, J., concurring. I agree with the result that the majority reaches and much of its opinion. I write separately only to express the view that this court should exercise its inherent supervisory authority to ensure that trial courts ordinarily give a special credibility instruction in any case in which a government informer has a potential interest in the outcome of the case sufficient to give that witness a motive to falsify his or her testimony to the benefit of the state. A special credibility instruction, which cautions the jury to review the testimony of such an informer with particular scrutiny and to weigh his or her testimony with greater care than the testimony of an ordinary witness, is important in such circumstances because a defendant has a strong interest in ensuring that the jury appreciates the potential that exists for false testimony due to the informer's self-interest.[1]

In *State* v. *Patterson*, 276 Conn. 452, 886 A.2d 777 (2005), this court acknowledged that, as a general rule, "a . . . defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely." (Internal quotation marks omitted.) Id., 467. This court also has recognized only two exceptions to this rule, namely, the complaining witness exception and the accomplice exception. Id. In *Patterson*, however, the defendant, Anthony E. Patterson, claimed that we should also recognize an exception for jailhouse informants who provide testimony for the state in return for consideration from the state. "In essence, [Patterson] contend[ed] that the rationale underlying the requirement of a special

---

[1] I agree with the majority that the defendant, Luis Diaz, is not entitled to plain error review of his claim. I also agree with the majority's affirmance of the trial court's judgment. I disagree with the majority only insofar as it rejects the defendant's contention that this court should exercise its supervisory authority to adopt the rule that he seeks for application in future cases.

credibility instruction in cases involving accomplice or complainant testimony, namely, the fact that the accomplice or complaining witness has a powerful motive to falsify his or her testimony, applies with equal force to an informant who has been promised a reduction in his sentence or other valuable consideration by the state in return for his testimony against the accused." Id., 469.

We agreed with Patterson that a special credibility instruction is warranted in such cases. We explained: "[A]n informant who has been promised a benefit by the state in return for his or her testimony has a powerful incentive, fueled by self-interest, to implicate falsely the accused. Consequently, the testimony of such an informant, like that of an accomplice, is inevitably suspect. As the United States Supreme Court observed more than fifty years ago, [t]he use of informers, accessories, accomplices, false friends, or any of the other betrayals which are dirty business may raise serious questions of credibility. *On Lee* v. *United States*, 343 U.S. 747, 757, 72 S. Ct. 967, 96 L. Ed. 1270 (1952). The United States Supreme Court therefore has allowed defendants broad latitude to probe [informants'] credibility by cross-examination and ha[s] counseled submission of the credibility issue to the jury *with careful instructions. . . . Banks* v. *Dretke*, 540 U.S. 668, 702, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004), quoting *On Lee* v. *United States*, supra, 757; see *Hoffa* v. *United States*, 385 U.S. 293, 311–12, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966). Indeed, the court recently has characterized such instructions as one of the customary, truth-promoting precautions that generally accompany the testimony of informants. *Banks* v. *Dretke*, supra, 701. Because the testimony of an informant who expects to receive a benefit from the state in exchange for his or her cooperation is no less suspect than the testimony of an accomplice who expects leniency from the state . . . [Patterson] was entitled to an instruction substan-

tially in accord with the one that he had sought." (Emphasis in original; internal quotation marks omitted.) *State* v. *Patterson,* supra, 276 Conn. 469–70.

Thereafter, in *State* v. *Arroyo,* 292 Conn. 558, 567, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010), we extended our holding in *Patterson* to apply to the testimony of all jailhouse informants, regardless of whether they have been promised a benefit or merely have an expectation of a benefit. In reaching our conclusion, we observed that one study had "found that a particularly clever informant realizes that a successful performance on the witness stand is enhanced if it appears [that] he or she is not benefiting from the testimony. . . . These informants wait until after they've testified to request favors—a request that is generally answered. . . . And, because the reward is not offered before the testimony, the jury has no way to measure the informant's motivation to fabricate testimony, as the prosecutor . . . is under no obligation to disclose nonexisting exculpatory evidence. . . . R. Bloom, ['Jailhouse Informants,' 18 Crim. Just. 20, 24 (2003)]. Thus, the expectation of a [r]eward for testifying is a systemic reality; id.; even [when] the informant has not received an explicit promise of a reward." (Internal quotation marks omitted.) *State* v. *Arroyo,* supra, 568.

As we also noted in *Arroyo,* other commentators have made similar observations about the manner in which the state often deals with informers. See id., 568–69 and nn. 8–10. "[T]he snitch [or informer] system sometimes operates on implicit promises." Center on Wrongful Convictions, Northwestern University School of Law, "The Snitch System" (2004), p. 15, available at www.law.northwestern.edu/wrongfulconvictions/ issues/causesandremedies/snitches/ SnitchSystemBooklet.pdf (last visited August 3, 2011). Indeed, "[t]he [police] handler has no desire and sees

little benefit in formalizing the informant relationship." C. Zimmerman, "Toward a New Vision of Informants: A History of Abuses and Suggestions for Reform," 22 Hastings Const. L.Q. 81, 144 (1994). This is so because, "[o]nce the informant has finished testifying that he has not been promised anything . . . the prosecutor *must* go about getting the informant what he wants or 'risk' the informant 'recanting' his testimony." (Emphasis in original.) V. Wefald, "Watch Out! How Prosecutors and Informants Use Winking and Nodding to Try to Get Around *Brady* and *Giglio*," 58 Guild Prac. 234, 239–40 (2001). In other words, "[e]ven [in the absence of] a formal understanding, the reward inevitably comes . . . because failing to deliver in one case would chill prospective future snitches." Center on Wrongful Convictions, supra, p. 15.

In the present case, the defendant, Luis Diaz, claims that these same concerns militate in favor of a special credibility instruction whenever an informer expects or seeks a benefit from the state for his testimony, even if he or she has not received an express promise of such a benefit. In the defendant's view, the reasoning of our decisions in *Patterson* and *Arroyo* is equally applicable even when the witness is not a jailhouse informer. The majority agrees that "some of the same concerns" that gave rise to our decisions in those two cases are present "whenever a witness is in a position to receive a benefit from the government." Specifically, the majority acknowledges that "it is difficult for the defendant to ensure that the jury is fully aware of such a witness' potential motivations for testifying because both the witness and the government have an incentive not to enter into an explicit agreement before the witness testifies, even though there is frequently an implicit understanding that the witness will receive some consideration in exchange for testifying." The majority nevertheless rejects the defendant's invitation to extend the

requirement of a special credibility instruction beyond jailhouse informers on the ground that the concerns that animated our decisions in *Patterson* and *Arroyo* are not "as weighty in cases [in which] the witness is not testifying about a jailhouse confession . . . but is testifying about events concerning the crime that the witness observed." In support of this assertion, the majority explains that testimony by a jailhouse informer is "inherently suspect because of the ease with which such testimony can be fabricated, the difficulty in subjecting witnesses who give such testimony to meaningful cross-examination and the great weight that juries tend to give to confession evidence." Finally, the majority also states that adopting a special credibility instruction for all witnesses who seek a benefit for their testimony because of their involvement in the criminal justice system "would be creating an exception that would swallow the rule that the trial court generally is not required to give such an instruction for the state's witnesses."

Although I agree with the majority that a special credibility instruction may be especially important in cases involving jailhouse informers, I do not agree that it follows that such an instruction is unnecessary or unwarranted in other cases in which an informer seeks a benefit from the state. On the contrary, I believe that a special credibility instruction is appropriate in all such cases. In fact, in *Patterson*, this court addressed this very point in rejecting the state's argument that a special credibility instruction "is necessary in the case of an accomplice who has been promised leniency in return for his cooperation, but not in the case of an informant who has been promised a benefit for his cooperation, because the testimony of the former is likely to be more powerful and persuasive than that of the latter." *State v. Patterson*, supra, 276 Conn. 470 n.11. The court responded that the state's argument "misse[d] the

point." Id. We explained: "The primary reason why a special credibility instruction is necessary with respect to both categories of witnesses is because both such witnesses have an unusually strong motive to implicate the accused falsely." Id. The same holds true for purposes of the present analysis.

Moreover, as the majority concedes, it is difficult for a defendant to demonstrate the existence of an "implicit understanding" between the state and an informer that the latter will, in fact, receive a benefit for his or her testimony. In fact, it is likely to be *impossible* for the defendant to demonstrate the existence of such an understanding between the state and its witness. It is not surprising, therefore, that the sometimes murky relationship between the state and a witness seeking a benefit from the state in return for his or her cooperation previously has caused this court to express its concern about the extent to which the true nature of that relationship has been disclosed to the defendant.[2] See, e.g., *State* v. *Ouellette*, 295 Conn. 173, 189–90, 989 A.2d 1048 (2010).

This court recently has noted that it is "cognizant of the exhortation of the United States Supreme Court that it is [on] such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. *Napue* v. *Illinois*, [360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)]." (Internal quotation marks omitted.) *State* v. *Ouellette*, supra, 295 Conn. 190. "[Indeed] [a]s one court has noted, [i]t

---

[2] To the extent that the majority rejects the defendant's claim because to accept it would "swallow the rule" that a trial court generally is not required to instruct on the credibility of the state's witnesses, I disagree with the majority's reasoning. The state does not use informers in all criminal trials, but, when it does, and when those informers hope or expect to receive a benefit from the state in return for their testimony, the state cannot complain that a special credibility instruction is inappropriate because such an instruction is important to ensure that jurors are aware that such informers have a strong motive to falsify or to tailor their testimony.

is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence . . . . *United States* v. *Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987), cert. denied sub nom. *Nelson* v. *United States*, 484 U.S. 1026, 108 S. Ct. 749, 98 L. Ed. 2d 762 (1988); see also *Williamson* v. *United States*, 512 U.S. 594, 601, 114 S. Ct. 2431, 129 L. Ed. 2d 476 (1994) ([d]ue to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence . . .); *Washington* v. *Texas*, 388 U.S. 14, 22–23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) ([t]o think that criminals will lie to save their fellows but not to obtain favors from the prosecution for themselves is indeed to clothe the criminal class with more nobility than one might expect to find in the public at large); *DuBose* v. *Lefevre*, 619 F.2d 973, 979 (2d Cir. 1980) ([u]nquestionably, agreements . . . to reward testimony by consideration create an incentive on the witness' part to testify favorably [for] the [s]tate, and the existence of such an understanding is important for purposes of impeachment)." (Internal quotation marks omitted.) *State* v. *Ouellette*, supra, 190–91. The present case highlights this point. Each of the state's witnesses came forward only after developments in that witness' relationship with the criminal justice system prompted him to seek to use his testimony as leverage to obtain a favorable resolution of the matter or matters pending against him.

Because informers seeking a benefit from the state have a strong motive to falsely inculpate the accused, and because the state has a strong incentive not to enter into an express or explicit agreement with such witnesses, preferring, instead, to keep any such understanding unstated, I agree with those courts that require a special credibility instruction whenever a government informer hopes or expects to receive a benefit from the

prosecution. As the Second Circuit Court of Appeals has stated, "a defendant who makes [a request for a special credibility instruction] is entitled to a charge that identifies the circumstances that may make one or another of the government's witnesses particularly vulnerable to the prosecution's power and influence . . . and that specifies the ways (by catalog or example) that a person so situated might be particularly advantaged by promoting the prosecution's case." *United States* v. *Prawl*, 168 F.3d 622, 628 (2d Cir. 1999). In other words, the defendant is entitled to a charge that "invite[s] focus on individual predicaments of the witnesses" and contains "mention [of] the incentives that follow from certain transactions with the government."[3] Id., 628–29; see also *State* v. *Patterson*, supra, 276 Conn. 470 n.12 (citing cases requiring special credibility instruction); 1A K. O'Malley et al., Federal Jury Practice and Instructions (5th Ed. 2000) § 15.02, pp. 363–78 (same). I see no persuasive reason why such an instruction should not be given, and strong reason to do so. Accordingly, I agree with the defendant that we should exercise our supervisory authority over the administration of justice to require a special credibility instruction whenever an informer seeks a benefit from the state in return for his or her testimony.

---

[3] The majority asserts that *Prawl* does not "squarely" support the defendant's contention that a special credibility instruction should be required in cases involving an informer who seeks a benefit from the state because, in *Prawl*, the court "decline[ed] to decide whether [the] failure to give [an] individual special credibility instruction for government witnesses was [improper] . . . ." (Citation omitted.) Footnote 12 of the majority opinion. I disagree. A careful reading of *Prawl* reveals that the court did conclude that the District Court's failure to give the requested charge was improper. See *United States* v. *Prawl*, supra, 168 F.3d 628. The court in *Prawl* did not need to decide whether the error was harmful, however, because the court already had concluded, for another reason, that the defendant in that case was entitled to a new trial. See id., 629 ("[w]e need not decide whether the [court's failure to give the requested charge] is error that would *alone* justify vacating the judgment" [emphasis added]).