******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., concurring. I agree with, and join, parts I, II and IV of the majority opinion, and I concur in the result reached in part III regarding the trial court's failure to issue a special credibility instruction with respect to the state's witness, Leon Pruden. In my view, the trial court should have instructed the jury that Pruden was a jailhouse informant whose testimony should be examined with greater scrutiny than that of an ordinary witness because, as Justice Palmer explained in his concurring opinion in *State* v. *Diaz*, 302 Conn. 93, 121, 25 A.3d 594 (2011), "informers seeking a benefit from the state have a strong motive to falsely inculpate the accused, and because the state has a strong incentive not to enter into an express or explicit agreement with such witnesses, preferring, instead, to keep any such understanding unstated . . . ." Nonetheless, I conclude that the instructional error was harmless on the present factual record, and I therefore agree with the majority that the judgment of conviction should be affirmed.

The majority grounds its decision in part III on the putative distinction between a jailhouse informant who hopes for beneficial treatment from the state in exchange for testimony "regarding *statements* made [to the informant] by the defendant," on the one hand, and an informant who seeks the very same benefit in exchange for testimony regarding "events" that were "observed" by the informant, on the other. (Emphasis in original.) Part III of the majority opinion. The majority points out that this distinction derives from the majority opinion in *State* v. *Diaz*, supra, 302 Conn. 93, which concluded that it was not plain error for the trial court to fail to give a special credibility instruction, in the absence of a request by the defendant, if the informants "testified only about the events surrounding the shooting" as opposed to the defendant's statements about those events. Id., 104. The *Diaz* majority also declined to exercise its supervisory authority to require a special credibility instruction for all incarcerated informants who testify about "events surrounding the crime that [they] observed . . . ." Id., 110.

Despite the broad language in *Diaz*, our holding in that case was quite narrow—a trial court is not required, sua sponte, to issue a special credibility instruction for incarcerated witnesses who testify about events they observed if such an instruction has not been requested by the defendant.[1] The present appeal is distinguishable from *Diaz* because the defendant in this case, unlike the defendant in *Diaz*, filed a timely and otherwise proper request for a special credibility instruction at trial and, therefore, does not seek relief on appeal under either the plain error or supervisory authority doctrine.

The procedural point is significant because reversal for plain error "is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007). Again, a defendant cannot establish plain error when, as in *Diaz*, the substantive legal right urged by the defendant would have required an *extension* of existing law. See *State* v. *Diaz*, supra, 302 Conn. 104 n.8 ("[i]t is axiomatic that the trial court's proper application of the law existing at the time of trial cannot constitute reversible error under the plain error doctrine"). Likewise, the majority's refusal to exercise its supervisory authority in *Diaz* does not determine the result here because this court's supervisory powers represent "an extraordinary remedy that should be used sparingly . . . ." (Internal quotation marks omitted.) *State* v. *Edwards*, 314 Conn. 465, 498, 102 A.3d 52 (2014). *Diaz*, in short, does not control the open issue of whether a trial court must give a special credibility instruction when requested by a defendant in the case of an informant who hopes to obtain favorable treatment from the state in exchange for testimony about an event that he or she claims to have witnessed.

Turning to that open issue, I do not find the distinction between informants who testify about events perceived and those who testify about statements overhead to be a persuasive basis on which to deny a timely requested special credibility instruction. The *Diaz* majority cited absolutely *no* authority in support of this distinction, and my research has uncovered none.[2] In language quoted and adopted by the majority in this case; see part III of the majority opinion; the majority in *Diaz* baldly asserted that "[t]estimony by a jailhouse informant about a . . . confession is inherently suspect because of the ease with which such testimony can be fabricated, the difficulty in subjecting witnesses who give such testimony to meaningful cross-examination and the great weight that juries tend to give to confession evidence. . . . *In contrast, when a witness testifies about events surrounding the crime that the witness observed, the testimony can be compared with the testimony of other witnesses about those events, and the ability of the witness to observe and remember the events can be tested. Accordingly, cross-examination and argument by counsel are far more likely to be adequate tools for exposing the truth in these cases than in cases involving jailhouse confessions.*" (Citations omitted; emphasis added.) *State* v. *Diaz*, supra, 302 Conn. 109–10.

Again, *Diaz* provided no legal authority to establish the truth or accuracy of the italicized assertion. Nor does the majority in the present case identify any basis

for the conclusion. It is, of course, true that testimony about a confession *sometimes* may be more difficult to verify or to discredit than testimony about an event. But the converse is also true: testimony about an event may be more difficult to verify or to discredit than testimony about a statement. This should not surprise us because a statement *is* an event, and the ease or difficulty of proving any event will depend on the circumstances. Spoken words are intangible and evanescent, and they leave no mark unless recorded. Many events—including the momentary display of a gun in a private space, which allegedly occurred in Pruden's presence—are equally impermanent. The relative difficulty of testing the credibility of an informant who testifies regarding such statements or events will depend on the underlying factual circumstances. Was it physically possible that the informant was in the particular location at the particular time of the alleged statement or event? Was there anyone else present to corroborate the informant's testimony? Does the content of the informant's testimony (including the level of detail, corroborating facts, etc.) help establish or undermine the claim of veracity? Did the informant make a record or tell anyone about the statement or event soon after its occurrence? In more concrete terms, if Pruden testified that he had heard the defendant confess one month after the shooting instead of testifying that he had seen the defendant's gun one month before the shooting, why would it be so much more difficult to cross-examine him about the veracity of that testimony? Alternatively, if he had testified that he saw the defendant in possession of the gun when no one else was present, why would it be any less difficult to cross-examine him about the veracity of that testimony? These questions may help to explain why the distinction articulated by the majority in *Diaz* and relied on by the majority in the present case lacks supporting authority.

Even accepting, purely for the sake of argument, the claim that testimony about past statements is harder to disprove than testimony about past events, I would still disagree that this thin distinction justifies a different rule governing special credibility instructions. For the reasons explained in Justice Palmer's compelling concurring opinion in *Diaz*; *State* v. *Diaz*, supra, 302 Conn. 115–22 (*Palmer, J.*, concurring); the majority is mistaken when it asserts that the central rationale animating the cases adopting the special credibility instruction is inapplicable in the present context. See part III of the majority opinion. This misapprehension derives from a misidentification of that rationale. The need for a special credibility instruction is not driven primarily by concerns about the relative difficulty involved in disproving the informant's testimony. Rather, as we explained in *State* v. *Patterson*, 276 Conn. 452, 886 A.2d 777 (2005), the primary and predominant concern at

stake is that "an informant who has been promised a benefit by the state in return for his or her testimony has a powerful incentive, fueled by self-interest, to implicate falsely the accused. Consequently, the testimony of such an informant, like that of an accomplice, is inevitably suspect. As the United States Supreme Court observed . . . years ago, [t]he use of informers, accessories, accomplices, false friends, or any of the other betrayals which are dirty business may raise serious questions of credibility. *On Lee* v. *United States*, 343 U.S. 747, 757, 72 S. Ct. 967, 96 L. Ed. 1270 (1952). The United States Supreme Court therefore has allowed defendants broad latitude to probe [informants'] credibility by cross-examination and ha[s] counseled submission of the credibility issue to the jury *with careful instructions*. . . . *Banks* v. *Dretke*, 540 U.S. 668, 702, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004), quoting *On Lee* v. *United States*, supra, 757; see *Hoffa* v. *United States*, 385 U.S. 293, 311–12, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966). Indeed, the court recently has characterized such instructions as one of the customary, truth-promoting precautions that generally accompany the testimony of informants. *Banks v. Dretke*, supra, 701. Because the testimony of an informant who expects to receive a benefit from the state in exchange for his or her cooperation is no less suspect than the testimony of an accomplice who expects leniency from the state . . . the defendant was entitled to an instruction substantially in accord with the one that he had sought." (Emphasis in original; footnote omitted; internal quotation marks omitted.) *State* v. *Patterson*, supra, 469–70.

This fundamental rationale applies when an incarcerated informant, hoping for a benefit from the state in exchange for his or her testimony, testifies about any past event, whether it be a statement or some other alleged occurrence. "A special credibility instruction, which cautions the jury to review the testimony of such an informer with particular scrutiny and to weigh his or her testimony with greater care than the testimony of an ordinary witness, is important in such circumstances because a defendant has a strong interest in ensuring that the jury appreciates the potential that exists for false testimony due to the informer's self-interest." *State* v. *Diaz*, supra, 302 Conn. 115 (*Palmer, J.*, concurring). It is that simple.[3]

Applying these principles to the present case, I conclude that Pruden was a jailhouse informant and, therefore, that the defendant was entitled to the requested special credibility instruction. Pruden observed the defendant with a semiautomatic, black handgun one month before the shooting, but he did not approach the police with this inculpatory information until March 5, 2014—the day he was arrested in connection with a pending drug case. Pruden admitted that he hoped that, by sharing this information with the police, he would receive favorable treatment in his own criminal pro-

ceeding. Under these circumstances, it is beyond dispute that Pruden had "a powerful incentive, fueled by self-interest, to implicate falsely the accused," and his testimony, therefore, was "inevitably suspect." *State* v. *Patterson*, supra, 276 Conn. 469. Accordingly, I would hold that the trial court abused its discretion in denying the defendant's request for a special credibility instruction.

Nonetheless, I also would conclude that the trial court's failure to issue the requested instruction was harmless. Such an error "is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . Several factors guide our determination of whether the trial court's failure to give the requested instruction was harmful. These considerations include: (1) the extent to which [the jailhouse informant's] apparent motive for falsifying his testimony was brought to the attention of the jury, by cross-examination or otherwise; (2) the nature of the court's instructions on witness credibility; (3) whether [the informant's] testimony was corroborated by substantial independent evidence; and (4) the relative importance of [the informant's] testimony to the state's case." (Internal quotation marks omitted.) *State* v. *Jones*, 337 Conn. 486, 509, 254 A.3d 239 (2020).

As the majority points out, "defense counsel effectively impeached the credibility of Pruden during cross-examination" by eliciting "testimony from Pruden that he did not come forward with this information until the very day that he was arrested, seven months after he heard about the shooting," and that he only "came forward because he was hoping to obtain a benefit for himself." Part III of the majority opinion. Indeed, the defendant presented expert testimony regarding the unreliability of jailhouse informant testimony, and "[d]efense counsel highlighted the problem during closing argument, saying of Pruden, 'it is the hope for benefits that causes the problem, the unreliability. Pruden had an incentive to lie that is different from an ordinary witness; that's why you need to look carefully at this testimony.' " Id. The jury was made well aware of Pruden's apparent motive to testify falsely.

The trial court also gave a general credibility instruction that directed the jury to consider, among other things, whether a witness had "an interest in the outcome of the case or any bias or prejudice concerning any party or any matter involved in the case . . . ." The trial court did not name Pruden in its special credibility instruction, but it did instruct the jury on the dangers posed by jailhouse informant testimony, and the expert witness and defense counsel both urged the jury to consider these dangers when assessing the credibility of Pruden's testimony. In combination with the other information made available to the jury regarding the potential unreliability of this testimony, the jury had

the tools at its disposal to scrutinize Pruden's testimony more carefully than that of an ordinary witness.

Admittedly, Pruden's testimony regarding the defendant's possession of a gun one month before the shooting was not corroborated, but Pruden was not an eyewitness to the crime, nor was his testimony necessary to convict the defendant. Indeed, Pruden's testimony was relatively unimportant to the state's case, which relied predominately on the video footage of the Cheetah Club, as well as the eyewitness and DNA evidence placing the defendant at the club on the night of the murder, despite the defendant's contrary statements to the police. On the whole, I am confident that the trial court's failure to issue the requested special credibility instruction did not substantially affect the jury's verdict.

For the foregoing reasons, I concur in the result reached in part III of the majority opinion.

[1] I understand that this court stated in *Diaz* that "the trial court's failure to give a special credibility instruction . . . would not have been improper even if the defendant had requested such an instruction"; *State* v. *Diaz*, supra, 302 Conn. 104; but that statement was made in the context of plain error analysis, and I take it to mean simply that, even if the request had been made by the defendant, an adverse ruling by the trial court would not have been improper *under existing law*. See id., 104 n.8 ("[i]t is axiomatic that the trial court's proper application of the law existing at the time of trial cannot constitute reversible error under the plain error doctrine"). To the extent that the quoted language was intended to signal that this court would have rejected the defendant's argument for an extension of the existing law if, hypothetically, his claim had been properly preserved for appellate review, the statement was pure dictum and does not bind us. See, e.g., *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 810, 855 A.2d 174 (2004) (statements that are not essential to court's holding "may be regarded as dicta and, thus, not binding").

[2] The other cases on which the majority in the present case relies, namely, *State* v. *Jones*, 337 Conn. 486, 254 A.3d 239 (2020), *State* v. *Arroyo*, 292 Conn. 558, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010), and *State* v. *Patterson*, 276 Conn. 452, 886 A.2d 777 (2005), lend no support to its conclusion that a special credibility instruction is unnecessary when an incarcerated informant testifies about an event rather than a statement. These cases did not involve or discuss jailhouse informant testimony regarding an event; they involved only jailhouse informant testimony regarding a defendant's statements and hold that a special credibility instruction is necessary in that context. Nothing in *Jones*, *Arroyo*, or *Patterson* implies that a special credibility instruction is unnecessary, inappropriate, or inadvisable in the present context.

[3] The second ground on which the majority relies is "the wisdom of harmonizing our definition of jailhouse informants with the legislature's recent definition of a 'jailhouse witness' as 'a person who offers or provides testimony concerning statements made to such person by another person with whom he or she was incarcerated, or an incarcerated person who offers or provides testimony concerning statements made to such person by another person who is suspected of or charged with committing a criminal offense." (Internal quotation marks omitted.) Part III of the majority opinion, quoting *State* v. *Jones*, 337 Conn. 486, 506–507, 254 A.3d 239 (2020). The court in *Jones* expanded the definition of a jailhouse informant for purposes of a special credibility jury instruction and explained that one reason to do so was to adopt a definition matching the legislative definition of a "jailhouse witness" set forth in § 6 of No. 19-132 of the 2019 Public Acts, which is codified at General Statutes § 54-86o (d). See *State* v. *Jones*, supra, 505–507. In *Jones*, however, we could "think of no reason to employ a *more restrictive definition than the one adopted by the legislature to address precisely the same policy concern, namely, the potential unreliability of a jailhouse witness' testimony* . . . ." (Emphasis added.) Id., 507 n.12. Nothing in the logic or reasoning of *Jones* requires the rule to remain forever frozen there-

after or prevents the legislature or this court from adopting a more expansive definition of "jailhouse informant" or "jailhouse witness" to protect against the potential unreliability of such a witness' testimony. Indeed, in *Jones*, we recognized that it was not "necessary to harmonize the definitions" but that it was "preferable to do so unless there is a good reason" to depart from the legislative definition. (Emphasis omitted.) Id. In my view, there is good reason to depart from the legislative definition to address the situation presented in this case, and I see this departure as wholly consistent with the policy underlying the statute.

---